Good morning, Your Honors. Andrew Chang for the plaintiff in this case, appellant. Your Honors, I just want to focus on a couple of points in this appeal. First of all, I want to just, as an introductory comment, normally I know that the CIS, and we all know that the CIS has given substantial discretion in its decisions, its findings are given great deference, and that is the normal situation, but this is not a normal case. This is a case where, and I want to focus on the element of estoppel. We have other grounds in the appeal, but the crux of this appeal is estoppel. And again, normally the government is not held to that doctrine of estoppel. Normally it's able to avoid it. But in this case again the government's held to it, but you have to show affirmative misconduct. That's correct. That's what I mean. It's a very difficult burden for appellants to show, for Petitioners to show. It is a very difficult burden. In this case, though, what we have is the filing of an action in early 2005. It's then followed by a very quick motion for summary judgment. There's been no discovery done, and what the motion for summary judgment is directed at is, in particular, a failure of evidence to show that the agency's decision was arbitrary or capricious, and also, of course, to show that there is no estoppel in this case. Well, without evidence, it's very difficult to show estoppel. What you're left with is the bare record. And the bare record is not a whole lot in this case, and one of the reasons there's not a whole lot in this record is because really virtually nothing was done on this man's application and process for over seven years. And I say virtually nothing because there were some routine things undertaken, but what happened about two to five years into the seven-year, over-seven-year process is at some point the file was lost. But this wasn't told to the Petitioner. This wasn't told to the Petitioner until almost six years after his original application was filed. And during that time, when Petitioners and his counsel were making inquiries, the government never once told him or his counsel what the true state of affairs was. Now, you've got to be careful. How does that prejudice him? I mean, in a way, it's a lucky break. If he had not been nosing around to find out what would have been happening on his case, he probably wouldn't be here today. Well, it prejudices him because ultimately, as it turns out, the government's basis for denying his petition is essentially that he didn't provide information to them. So in essence, the government is saying to the Petitioner, you haven't been diligent on your side. Well, the Villena case is a case right squarely on that, which this Court said in Jaw when it, JAA, when it discussed Villena and was trying to decide whether it can distinguish them or not. It said that Villena was a case like ours where if the government is claiming revocation or adverse action based upon the Petitioner's lack of diligence, the government is to stop from making that argument when the government itself is guilty of a lack of diligence, whether in delay or if there's other evidence of affirmative misconduct. And so that, and that is really what estoppels about it. If the government is claiming that the Petitioner has done something wrong, and that's the reason for not giving him the relief that he's seeking, the government has to show that it's not their burden, but the government has to overcome a showing that, in fact, it was the one that was not diligent. That it affirmatively concealed facts, that it lost the file and didn't tell him, that it, that it, at the last minute when he brought a petition to compel some action to be taken on his process, the government then immediately sends out a notice of intent to revoke and for the first time asks him, where's that additional information? What additional information? They have never asked him that before. Okay. So then they, they found his file because he asked them to be poked around and got him started again. Well, no, they didn't find the file. They never found it. No, well. They asked him to resubmit. They get it started again. They kind of started it up again. So they invite him to submit the information. Yes. And he submits the information. It's not sufficient. Well, first of all, who knows if the information that he's resubmitted is the same information they had before. Well, what they want to make, the stuff he sent is, they rule is not, doesn't measure up to what he has to do. Well, we've discussed that in our brief. That also doesn't hold water either. That's what I wanted to ask you about. Why is that wrong? Well, because the three out of the four basis that they decided were insufficient under his, under the information that they asked him to resubmit is arbitrary. Because if you look at every one of the... Three of the four. Well, they conceded the fourth. They conceded that that's fine, that that was sufficient. So we're down to three. Counsel, you know what I don't understand here is that the INS or CIS sent a notice of intent to revoke. And instead of responding to that, your client filed this lawsuit. And I guess, and then it was revoked, the visa was revoked, and he didn't appeal that, instead pursuing this action. And what I don't understand is, you know, wouldn't he have been in a lot better position today if he had just responded to the notice of intent and supplied the additional information or answered? I'm not sure about that, Your Honor. I wasn't involved in that decision. It's really a problem. Perhaps. It's a problem for me if you're talking about asking for the court's equities. It's a problem for me that he didn't respond when he was asked to respond by the CIS. Okay. But that issue can also be resolved in this proceeding. Well, he also mailed them a copy. I mean, I was concerned about that same point that Judge Wardlaw raises. If I understand correctly, he did mail them a copy of his complaint, and they were willing to treat that as an answer. In fact, they discussed it in their ruling. They find his answer insufficient, but, I mean, they acknowledge receiving it and dealing with it. Well, the complaint certainly wasn't meant to be a response to the request for information, but I understand that, yes, they treated it. They would treat it as such. I understand the court's, I suppose, surprise at the way the response was. But in defense of the client, this is over seven and a half years of waiting. And it's over seven and a half years of not just sitting and waiting, but actually checking on the process and doing everything they're saying, resubmitting, and it's only when he finally is frustrated and files a petition to just compel some action to be taken that he receives a request for this so-called additional information immediately. And, again, it's not information that they had ever asked him for previously. So, you know, that's the posture we're in now. And what I was referring to in terms of those issues of what information does he have that he can still provide, that can be dealt with in this proceeding. And, in essence, remember that the complaint only seeks that we set aside the process. And if we do that, then we're back to, you know, square one. It's not that he immediately gets his relief. It's that we start all over. We get a chance to submit the additional information that the CIS feels that they need. But also we kind of remove that taint of the seven and a half years of not only a lack of diligence and delay, but concealment of the fact that his file was lost and was never was concealed from him. I'll reserve the minute and a half left for rebuttal. Thank you, Mr. Chair. Thank you. Good morning, Your Honors. I'm Assistant United States Attorney David Pincus, and I represent the defendant, CIS, in this lawsuit. May it please the Court, when you add up all the facts that were presented to CIS, at the very least it was justified in questioning whether Mr. Yoon's religious worker visa had been issued in error. And CIS did make a preliminary determination in the notice of intent to revoke that there had been an error. But as the Court pointed out just a minute ago, the key point in the case is that they gave Mr. Yoon a chance to present evidence to support his case and to alleviate their concerns. And I think the key point in the case is that Mr. Yoon didn't do so. He simply filed a complaint in this action and didn't specifically address the issues on which CIS revoked the visa, except for one case. He did mention in his complaint, he explained about how the temple had changed its corporate name, and CIS took that into account in issuing its final agency decision. So it wouldn't be no – there really can't be any argument that it would have been futile. Obviously, CIS was listening. They were looking for evidence. He just didn't provide it. And at all times, the burden is on the visa applicant, not CIS, but the visa applicant, to demonstrate his eligibility for the visa. This is just a case where Mr. Yoon didn't satisfy his burden of proof. Therefore, it wasn't irrational, arbitrary, or capricious for CIS to revoke the visa authorization, given the constellation of facts with which it was presented. For example, Mr. Yoon was – there's no dispute that he was a full-time student studying Oriental medicine and acupuncture, not religion. He may have volunteered at the temple in his spare time when he was a student, but he had no apparent means to support himself. In fact, he admitted in an interview that he was working as a delivery worker. What happens if he belongs to a denomination that has a lay clergy, doesn't have a professional paid clergy? I'm not sure I understand the question. Well, like the LDS Church, for example. They're not – the ministers, the bishops are not paid. Well, CIS doesn't require a salary. It says – the regulation said salary or other remuneration. But there are many orders that have – that don't pay a clergyman a salary. But what they do, they give room and board, they give a stipend. The concern is really, I think, that – Was that traditional in the Buddhist, the Buddhist temple to which he belonged? Or was it traditional to pay the Buddhist master? Well, in this case, Your Honor, the application was salary-based. I mean, they told CIS, we'll be paying him a salary. So that – I don't think we're talking about a denomination where we have that problem. But again, if that was the issue, then they could have told us that. That's the sort of thing that CIS was asking, please explain. And they gave him 30 days in which to do so. And as we know, he just chose to file this lawsuit instead. And, you know, if the lawsuit maybe – even if the complaint had been more specific, perhaps they could have explained it there. But again, the only specific point that they addressed was about the name change of the temple. And that was taken out of the federal agency decision. It wasn't a ground for revocation. I think that there is also a statute that we have to consider, Section 1182, which deals with inadmissible aliens. People who are coming here to be a public charge or to circumvent the labor certification laws are not admissible. And there is a concern about fraud in these types of cases. I recall in the 1980s there was a big scandal involving the Bhagwan Sri Rajneesh, who was bringing over all sorts of people here on religious worker visas that weren't eligible. Mr. Yun was never at the temple when they checked, when CIS checked five times in one week. He was never there, even though he told the interviewer that he was doing most of his activities at the temple. We know from his tax returns that Mr. Yun was working as a delivery worker. And he put on his 2000 tax returns that that was his principal occupation. And he was even deducting his meals and his automobile. The temple was operated out of a residence. The temple was a suspended corporation, not allowed to conduct any business in California. So there was a concern as to how this temple is an ongoing concern that's paying its employee. Do the new regulations or have the proposed regulations gone into effect? Not to my knowledge, Your Honor. So they don't have any impact on this case? I don't think so. All these factors suggest that Mr. Yun did not come to this country in order to carry on the vocation of Buddhist master, and certainly not solely to do so. And therefore, CIS had every reason to question whether this visa had been issued in error. Now, Mr. Chang, I believe, was saying that there was some kind of failure to tell Mr. Yun about the concerns about his application. On page 8 of my answering brief, this is in, I believe, the facts section, and there are references to the record. Mr. Yun was asked to submit a copy of his applications in 2002. In July of 2003, he was interviewed again when he had a wife that was going to join his petition, and he was advised that the adjustment of status of his application had been referred back for further review and possible relocation. So he was aware at all times that, not maybe not at all times, but he was definitely kept aware that there was a problem with this application and that CIS was investigating it. Maybe they took longer than I would have liked, but mere delay has never been the standard. What about the situation with the lost file for seven years, the lost file? Well, Your Honor, I think it was the problem, I think, what happened there was that because it keeps getting transferred to different offices for investigation, that's how these things get lost, if it doesn't stay with the same. But eventually, we recreated the file. And I was involved with the previous case, the Mandamus case that they filed, and I asked the counsel for Mr. Yun at the time to give us some supplementary, another copy of the adjustment application, and she did so. And that's why it got resolved. And I don't know if it was immediately, but it did get resolved. They did get adjudicated. The problem is, and I mean, there are all these questions, all these constellation of factors that would cause any reasonable agency to question whether this was a legitimate application. And again, if there was some sort of evidence to the contrary, Mr. Yun was the one who had the responsibility to provide it. I don't see any grounds for discovery in this case. I mean, discovery is not generally permitted in APA, and I realize this may not be, strictly speaking, an APA standard based on the Anna International case, which said that the APA standard has been superseded in this type of case. But even so, there has to be a strong showing of agency bad faith before discovery will be allowed. And that hasn't been an allegation. I don't even know if there's been an allegation at this point. There was in the district court, but it seemed to me that it's been — that wasn't really raised in the opening brief, and so, therefore, it's been abandoned. Unless the Court has any more questions, I really don't have anything more to add. Roberts. Thank you, Mr. Pinker. Chang, back to you. I want to remind the Court that this is a summary judgment appeal. This — there was no trial in this case. The evidence and all inferences are in our favor. So it's — it's — we can't sit here as if there were a trial, because there wasn't. Now, counsel has said that he — that the CIS had raised concerns earlier on in the case, and that just isn't true. What they did say is they said in 2002, and this is about five — over five years after the beginning, please resubmit documents. That's — they didn't have any — they didn't tell him of any specific concerns. They just said resubmit documents. They didn't even tell him at that point the file had been lost. They just said resubmit. So they never suggested they had concerns of any kind. They just said resubmit. Then, in July 2003, which is over six years now, or close to seven years after the process began, that's when they say the file's been lost. Again, still no indication of specific concerns or any additional information they needed. That didn't come in until the notice of intent to revoke went out, and that's over seven years later, and it's after his counsel had filed a petition to find — to try to get the process moving. So it's — the fact is that there was over a seven-year period before anybody asked or suggested that there were any specific concerns with his information. And I just want to set that straight. So what you have here is you have an over-seven-year delay. You've got genuine issues of material fact about affirmative misconduct and concealment. And that should be enough to get the judgment reversed and back to square one. Thank you. Thank you, Jay. Mr. Pincus, thank you. The case just argued is submitted. 0650152, United States v. Memorial Luna. Each side will have 10 minutes. Thank you. Good morning.
judges: Silverman, Wardlaw, Bybee